UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
P & E PROPERTIES, INC.,                             :
                                                    :
                        Plaintiff,                  :      08 Civ. 00553 (MGC)(DCF)
                                                    :
            -against-                               :      **AMENDED ANSWER AND**
                                                    :      **COUNTERCLAIMS**
UNITED NATURAL FOODS, INC. and                      :
MILLBROOK DISTRIBUTION SERVICES INC.,               :      ECF CASE
                                                    :
                        Defendants.                 :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Defendants United Natural Foods, Inc. ("UNFI") and Millbrook Distribution Services

Inc. ("Millbrook"), by their attorneys, Covington & Burling LLP, respond to the Complaint of

Plaintiff P & E Properties, Inc. ("P&E") as follows, upon knowledge as to themselves and their

own acts and upon information and belief as to all other matters:

        1.     Defendants deny the allegations set forth in paragraph 1 of the Complaint, except

admit that Plaintiff filed this action against Defendants seeking the stated relief.

        2.     Defendants (i) admit that P&E and Millbrook entered into a General

Administration Services Agreement dated February 15, 2007 (the "Services Agreement"),

(ii) deny that paragraph 2 of the Complaint fully and accurately summarizes the referenced

provisions of the agreement, and (iii) respectfully refer the Court to the Services Agreement for

the terms thereof.

        3.     Defendants deny the allegations of paragraph 3 of the Complaint, except admit

that in November 2007 Millbrook was acquired by UNFI pursuant to a merger agreement under

which a UNFI subsidiary merged with Millbrook's parent company, Distribution Holdings, Inc.

("DHI") (the "Merger").

4.    Defendants deny the allegations of paragraph 4 of the Complaint, except admit that Plaintiff seeks the stated relief.

5.    Paragraph 5 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that the Court has subject-matter jurisdiction over this action.

6.    Paragraph 6 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that the Court has personal jurisdiction over defendants for purposes of this action.

7.    Paragraph 7 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that venue is appropriate in this District.

8.    Defendants admit that P&E is a privately-owned corporation with a principal place of business located at 444 Madison Avenue and that it purports to provide administrative and executive services. Defendants otherwise deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 8 and therefore deny them.

9.    Defendants admit the allegations of paragraph 9 of the Complaint.

10.    Defendants admit the allegations of paragraph 10 of the Complaint.

11.    Defendants admit that the relationship between P&E and Millbrook has existed for approximately ten years and that P&E has provided Millbrook with certain administrative services during that period. Defendants further admit that attached to the Complaint as Exhibit A is a copy of the Services Agreement entered into by P&E and Millbrook and dated February 15,

2007, to which the Court is respectfully referred for its contents. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 11 of the Complaint and therefore deny them.

12.     In response to paragraph 12 of the Complaint, Defendants admit that P&E agreed to provide certain of the referenced services under the Services Agreement and respectfully refer the Court to the Services Agreement for the full and complete terms thereof.

13.     Defendants (i) admit that Section 2 of the Services Agreement sets forth a Term for the engagement of P&E as Servicer, (ii) deny that the term is fully and accurately summarized in paragraph 13 of the Complaint, and (iii) respectfully refer the Court to the Services Agreement for its contents.

14.     In response to paragraph 14 of the Complaint, Defendants (i) admit that the Services Agreement contains compensation provisions including the quoted language (with the exception of the bracketed modifications), (ii) deny that paragraph 14 fully and accurately summarizes the compensation provisions in question, and (iii) respectfully refer the Court to the Services Agreement for the complete terms thereof.

15.     In response to paragraph 15 of the Complaint, Defendants (i) admit that the Services Agreement contains the quoted language (with the exception of the bracketed modifications), and (ii) respectfully refer the Court to the Services Agreement for the complete terms thereof.

16.     Defendants admit the allegations of paragraph 16 of the Complaint.

17.     Defendants admit the allegations of paragraph 17 of the Complaint.

18.     Defendants admit the allegations of paragraph 18 of the Complaint.

19.    Defendants admit the allegations of paragraph 19 of the Complaint.

20.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the Complaint and therefore deny them.

21.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of the Complaint and therefore deny them.

22.    Defendants deny the allegations of paragraph 22 of the Complaint, including those contained in the first sentence of paragraph 22 of the Complaint, as to which Defendants' denial is based on a lack of knowledge or information sufficient to form a belief as to their truth.

23.    Defendants deny the allegations of paragraph 23 of the Complaint, except admit that checks drawn on a Millbrook-owned account were issued to certain P&E employees prior to the Closing Date.

24.    Defendants deny the allegations of paragraph 24 of the Complaint, except admit that Millbrook stopped payment on certain checks issued to P&E employees shortly after the Closing Date, at a time when Millbrook was owned by a UNFI subsidiary.

25.    Defendants deny the allegations of paragraph 25 of the Complaint.

26.    Defendants deny the allegations of paragraph 26 of the Complaint, except admit that Millbrook has not as of the date of this Answer paid a monthly management fee to P&E for the month of January 2008. Defendants further state that nothing in this response should be construed as an admission or concession by Millbrook of any liability or wrongdoing, all of which Millbrook expressly denies.

27.    Defendants incorporate by reference their responses to paragraphs 1 through 26 of the Complaint.

28.     Defendants deny the allegations of paragraph 28 of the Complaint, except admit that Millbrook and P&E entered into a Services Agreement which purports to set forth certain respective obligations of Millbrook and P&E.

29.     Paragraph 29 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of paragraph 29 of the Complaint.

30.     Paragraph 30 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that Millbrook continued to be a party to the Services Agreement following the Merger.

31.     Paragraph 31 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of paragraph 31 of the Complaint.

32.     Paragraph 32 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of paragraph 32 of the Complaint.

33.     Defendants deny the allegations of paragraph 33 of the Complaint, except admit that Millbrook has not (i) as of the date of this Answer paid a monthly management fee to P&E for January 2008 or (ii) paid any of the purported "retention compensation" costs P&E seeks to recover in this action. Defendants further state that nothing in this response should be construed as an admission or concession by Millbrook of any liability or wrongdoing, all of which Millbrook expressly denies.

34.     Defendants deny the allegations of paragraph 34 of the Complaint.

35.    Defendants incorporate by reference their responses to paragraphs 1 through 26 of the Complaint.

36.    Defendants admit that Millbrook and P&E entered into the Services Agreement and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 and therefore deny them.

37.    Defendants deny the allegations of paragraph 37 of the Complaint.

38.    Defendants deny the allegations of paragraph 38 of the Complaint, except admit that Plaintiff seeks the stated relief.

39.    Defendants incorporate by reference their responses to paragraphs 1 through 26 of the Complaint.

40.    Paragraph 40 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Defendants admit the existence of the Services Agreement and deny knowledge or information sufficient to form a belief as to whether it was valid and binding.

41.    Defendants admit that UNFI was made aware of the Services Agreement.

42.    Defendants deny the allegations of paragraph 42 of the Complaint.

43.    Defendants deny the allegations of paragraph 43 of the Complaint.

44.    Defendants deny each and every allegation of the Complaint except as expressly admitted herein.

### As and for a First Affirmative Defense

45.    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### As and for a Second Affirmative Defense

46.    Plaintiff's claims are barred, in whole or in part, because of Plaintiff's non-performance of a condition precedent. At no time prior to the closing of the Merger did Millbrook receive or approve any request by P&E, as required by the Services Agreement, for payment of the purported "retention compensation" to any P&E employee. (*See* Services Agreement at Sections 3(c) and 12).

### As and for a Third Affirmative Defense

47.    Plaintiff's claims are barred, in whole or in part, because of Plaintiff's breach of the Services Agreement.

### As and for a Fourth Affirmative Defense

48.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to allocate costs as required by the Services Agreement.

### As and for a Fifth Affirmative Defense

49.    Plaintiff's claims are barred, in whole or in part, by Defendants' payments to Plaintiff pursuant to the Services Agreement.

### As and for a Sixth Affirmative Defense

50.    Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, estoppel, and/or waiver.

### As and for a Seventh Affirmative Defense

51.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's own wrongful conduct.

### As and for an Eighth Affirmative Defense

52.    Plaintiff's claims are barred, in whole or in part, on the ground that any alleged interference with contractual relations was not tortious, improper or wrongful.

### As and for a Ninth Affirmative Defense

53.    Plaintiff's claims are barred, in whole or in part, on the ground that Plaintiff cannot establish intent to interfere with a valid and binding contractual obligation.

### As and for a Tenth Affirmative Defense

54.    Plaintiff's claims are barred, in whole or in part, on the ground that Plaintiff itself is responsible for any injury Plaintiff allegedly suffered.

### COUNTERCLAIMS

For its counterclaims against Plaintiff P & E Properties, Inc. ("P&E"), Defendant and Counterclaim Plaintiff Millbrook Distribution Services Inc. ("Millbrook") alleges as follows, upon knowledge as to itself and its own acts and upon information and belief as to all other matters:

### Nature of the Counterclaims

55.    P&E and Millbrook entered into a General Administration Services Agreement dated February 15, 2007 (the "Services Agreement" or "contract"), under which P&E agreed to provide certain administrative services to Millbrook in good faith and to the best of P&E's capabilities. The services P&E agreed to provide included, *inter alia*, financial services, such as treasury and cash management.

56.    Far from providing these services in good faith, P&E breached its obligations by abusing Millbrook's trust and improperly causing Millbrook to issue checks totaling over

$1,000,000 to P&E employees and other recipients. P&E also billed Millbrook for a variety of costs that were, in whole or in part, incurred for other clients, in breach of its contractual obligation to allocate costs between Millbrook and the other entities for whom P&E performs services.

57.    Millbrook brings these Counterclaims in order to recover damages for the injuries it has sustained as a result of P&E's breaches of contract. Millbrook also seeks a declaratory judgment that, as a result of P&E's breaches of contract, Millbrook is entitled to terminate the Services Agreement and be relieved of any further obligations to P&E under the agreement.

### The Parties

58.    Upon information and belief, Plaintiff and Counterclaim Defendant P&E is a corporation incorporated under the laws of New York, with its principal place of business in New York, New York.

59.    Defendant and Counterclaim Plaintiff United Natural Foods, Inc. ("UNFI") is a corporation incorporated under the laws of Delaware, with its principal place of business in Dayville, Connecticut.

60.    Defendant and Counterclaim Plaintiff Millbrook is a corporation incorporated under the laws of Delaware with its principal place of business in Leicester, Massachusetts. In November of 2007, Millbrook was acquired by UNFI pursuant to a merger agreement under which a UNFI subsidiary merged with Millbrook's parent company, Distribution Holdings Inc. ("DHI").

### Jurisdiction And Venue

61.    This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C.

§ 1332(a). The matter in controversy, exclusive of interest and costs, exceeds the sum of

$75,000, and there is complete diversity between the parties. In addition, to the extent that this

Court has original jurisdiction over Plaintiff's Complaint, it has supplemental jurisdiction over

Defendant's counterclaims under 28 U.S.C. § 1367(a).

62.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and 1391(c).

**Facts**

63.    On or about February 15, 2007, Richard Bernstein, then the Chairman of the

Board and principal stockholder of Millbrook, executed the Services Agreement with P&E on

Millbrook's behalf. The execution of the agreement was a self-interested transaction, not

negotiated at arm's length, insofar as Bernstein directly or indirectly owned a controlling interest

in P&E.

64.    Under the terms of the Services Agreement, P&E promised to provide a variety of

services such "providing general accounting and financial services, including treasury and cash

management;" "assisting in the development of long-term corporate strategy, including the

development of three (3) year plans;" and "providing assistance with respect to the Company's

information systems including periodic reviews and coordination of the implementation of

upgrades and new systems." (Services Agreement § 1(b)). The full list of services P&E agreed

to provide (the "Services") is set forth in Section 1(b) of the Services Agreement.

65.    P&E agreed to perform these Services "in good faith and to the best of [its]

capabilities." (Services Agreement § 1(d)). P&E further represented that it (i) had "the

personnel, facilities and resources required to discharge . . . the Services contemplated by this

Agreement in a timely and efficient manner," and (ii) had "the administrative, business and

-10-

technical experience and expertise required to perform" and would perform "the Services in a competent and professional manner." (*Id.* at § 5).

66.    In consideration for P&E's performance of the Services, Millbrook agreed to pay P&E an annual management fee of $300,000 in equal disbursements of $25,000 per month. (*See* Services Agreement § 3(a)). It also agreed, subject to various terms and conditions, to reimburse P&E for certain costs incurred in the performance of the Services.

67.    Specifically, the contract provided that P&E could seek reimbursement for the (i) "direct costs" of Millbrook's utilizing P&E's personnel; (ii) "actual out-of-pocket expenses" incurred by P&E in providing the Services to Millbrook; and (iii) "a reasonable charge for indirect costs of the Servicer which shall be based upon a reasonable and equitable allocation of the Servicer's corporate overhead." (Services Agreement § 3(b)).

68.    P&E's right to seek reimbursement for these costs was subject, however, to certain conditions and limitations. Under the Services Agreement, the incurrence of any extraordinary out-of-pocket expense was required to be "approved in advance by [Millbrook]." (Services Agreement § 3(c)). Moreover, any "requests" or "demands" – whether for the approval of extraordinary expenses or otherwise – were required to be made in writing to the attention of Millbrook's President. (*See id.* at § 12).

69.    Section 3(d) of the Services Agreement further provided that P&E was required to allocate "any chargeable costs for the Services" between Millbrook and any other entities responsible for the costs "in an equitable manner." (Services Agreement § 3(d)).

70.    P&E was required to bill Millbrook for costs reimbursable under the contract "on a monthly basis, based upon [its] best estimate of the costs of the Services for the month, with a

'true up' within thirty (30) days after the end of the annual period." (Services Agreement § 3(a)).

71.    As set forth below, P&E breached these and other obligations set forth in the agreement.

*P&E Improperly Passes Costs Through to Millbrook*

72.    From at least February 2007 through October 2007, P&E billed Millbrook $140,000 per month, which was comprised of the $25,000 monthly management fee described above and an additional $115,000 for costs P&E purportedly incurred on behalf of Millbrook.

73.    P&E provided no itemization of these costs nor any documentation substantiating the expenses. Millbrook was thus left to wait for the contractually agreed upon "true up" period for an accounting that would verify that the costs were properly attributable to services performed for Millbrook and adjust for any inaccurate cost estimates. Millbrook paid the invoices it received from P&E pending the "true up."

74.    Under the Services Agreement, P&E was required to provide the "true up" within thirty days of the end of the annual period. (*See* Services Agreement § 3(a)). P&E breached this obligation. As of the date of these counterclaims, P&E has yet to provide (i) any itemization of the $115,000 in costs it billed per month, (ii) any documentation substantiating these costs and showing that they were properly incurred on behalf of Millbrook, and (iii) any reconciliation of estimated and actual expenses.

75.    Upon information and belief, P&E has failed to provide a true up because the costs it billed Millbrook exceeded the costs it actually incurred on Millbrook's behalf. The $115,000 monthly cost bill exceeds any personnel or other costs P&E could reasonably have

incurred in performing services for Millbrook, given the few services it actually provided under the contract.

76.    Upon information and belief, the costs for which P&E billed Millbrook included personnel costs attributable in part to work P&E performed for other entities or other costs not properly attributable to Millbrook. In billing Millbrook for these costs, P&E breached its contractual obligations to bill Millbrook only for costs incurred "in providing the Services" (Services Agreement § 3(a)) and to "allocate such costs between" Millbrook and other entities responsible for such costs in an "equitable manner" (Services Agreement § 3(d)).

<em>P&E's Bad Faith Attempt to Misappropriate Millbrook Funds</em>

77.    In or about October 2007, Millbrook and its parent company DHI entered into a merger agreement with Defendant UNFI, under which DHI agreed to merge with and into a UNFI subsidiary. Under the terms of the agreement, Millbrook was to become wholly-owned by UNFI's subsidiary upon completion of the merger.

78.    The merger agreement further provided that P&E's principal, Richard Bernstein, was to resign his position as Chairman of the Board of Millbrook and receive cash in exchange for his controlling interest in Millbrook's parent, DHI. Other P&E employees who held positions as officers and directors of Millbrook were likewise to resign those positions and, to the extent they owned shares in DHI, receive cash in exchange for those shares. The aggregate merger consideration to be received by Millbrook's shareholders was $84,000,000 less certain adjustments for principal, fees, charges, and accrued but unpaid interest owing under a certain Credit Agreement and certain Loan Agreements. A portion of the merger consideration was required to be held in escrow and made available to satisfy certain obligations of the

shareholders, including obligations under the indemnification provisions of the agreement.

79.    The merger agreement contained numerous covenants, representations, and warranties designed to ensure that cash and other assets would not be improperly siphoned out of the business in the period between the signing of the agreement and the closing date when the transaction was completed.  For example, the agreement contained covenants that the assets of Millbrook and DHI would be maintained in the ordinary course consistent with past practice and that the business of each would be conducted in the ordinary course consistent with past practice. Similarly, Millbrook and DHI were required to represent that they would not engage in "any transaction outside the ordinary course of business," including (without limitation) the payment of severance or termination compensation to employees and the disposal, other than in the ordinary course of business, of any company assets.

80.    P&E was aware of these restrictions in the merger agreement.  It was also aware that, under the terms of its Services Agreement with Millbrook, P&E was required to perform all Services it provided to Millbrook, including financial services such as treasury and cash management, in "good faith," to the "best of [its] capabilities," and in a "competent and professional manner."  (Services Agreement §§ 1(d) and 5).

81.    As set forth below, P&E breached its obligation to perform the Services, including treasury and cash management functions "in good faith," to the "best of [its] capabilities," and in a "competent and professional manner" by abusing Millbrook's trust and attempting, shortly before the merger transaction was completed, to cause the company to make more than $1,000,000 in extraordinary, unauthorized and improper payments to P&E employees and other recipients.

82.    On or about October 31, 2007, the day before the merger transaction was scheduled to close, P&E employees obtained twelve blank checks from Millbrook's acting comptroller under false pretenses, telling the comptroller the blank checks were needed for unspecified closing expenses. P&E then caused these checks to be issued to various parties for reasons totally unrelated to the closing. Nine of these checks totaling $855,023 were written to P&E employees as follows:

    a.   Hal Weiss received a check in the amount of $121,021;

    b.   Reuven Har-Even received a check in the amount of $15,260;

    c.   James Cohen received a check in the amount of $204,718;

    d.   Ira Gomberg received a check in the amount of $189,500;

    e.   Raphael Ortiz received a check in the amount of $67,309;

    f.   Kristie Tilas received a check in the amount of $42,011;

    g.   Carol Weidenthal received a check in the amount of $49,547;

    h.   Elizabeth Ganss received a check in the amount of $103,551; and

    i.   Renato Tuazon received a check in the amount of $62,106.

83.    Richard Bernstein, P&E's sole shareholder, executed the checks on Millbrook's behalf without proper authorization. Although Bernstein was at one point the Chairman of the Board of Millbrook, he was required, pursuant to the terms of the merger agreement, to resign that position on the same day the checks were issued.

84.    Even before his resignation, Richard Bernstein would have lacked authority to issue the checks. Under Millbrook's bylaws, "general and active management" of the business affairs of the Company was vested in the President and Chief Executive Officer, Robert Sigel.

Sigel – who was also the person designated under the Services Agreement to receive all notices, demands, and requests from P&E – was not informed of the checks until after they were issued and never approved their issuance.

85.     There was no legitimate business purpose for these unauthorized payments made directly to P&E employees. Documentation submitted to Millbrook after the fact described the purpose of the payments as "severance," but Millbrook had no obligation to pay severance to any P&E employee. P&E never obtained Millbrook's advance approval to pay severance, as the contract required for all extraordinary out-of-pocket expenses. (See Services Agreement §§ 3(c) and 12). Moreover, severance payments cannot reasonably be described as costs incurred in performing services for Millbrook. Furthermore, the "severance" justification appears to have been a sham. Upon information and belief, the vast majority of the P&E employees who received severance checks remain employees of P&E today, months after the purported "severance" checks were issued.

86.     Certain of the P&E employees who received checks also were nominal officers or directors of Millbrook up until the closing date of the merger, but Millbrook did not pay any of them a salary and thus had no reason to pay any of them severance. Moreover, as P&E was aware, Millbrook was barred by the terms of the merger agreement with UNFI from granting any severance or termination pay to any employee or otherwise incurring expenses other than in the ordinary course of business.

87.     P&E also caused a check totaling $32,666.67 to be issued to itself, and caused a check totaling $221,164.78 to be issued to the law firm of Baker & McKenzie LLP. Upon information and belief, the check to Baker & McKenzie LLP was issued, in whole or in part, for

legal services provided by the firm to Richard Bernstein and other former shareholders of
Millbrook in their personal capacities.

88.     After Millbrook's acting comptroller informed senior management that P&E
employees had obtained blank checks from Millbrook on the eve of the merger, Millbrook
stopped payment on all of the checks to avoid the improper misappropriation of company funds.

*P&E Renews Its Efforts to Misappropriate Millbrook Assets*

89.     Thereafter, P&E continued in its effort to misappropriate funds from Millbrook
for the benefit of its employees. On November 14, 2007, P&E submitted an invoice to
Millbrook, apparently backdated to November 1, 2007, demanding $967,747 in payments for a
purported "[s]alary continuation plan" for ten P&E employees, including the nine who had
previously received checks and an additional P&E employee, Tracey Marrero.

90.     In a cover email, P&E employee Reuven Har-Even asserted that the "salary
continuation plan" had been agreed to between Millbrook and P&E in order to ensure the
continued service of the employees in question during the period when Millbrook was exploring
and negotiating a merger and the period when it was in contract with UNFI. The assertion was
false. Neither Millbrook's CEO, Robert Sigel, nor its chief financial officer, Robert Lieberman,
ever approved or had knowledge of any such "salary continuation plan."

91.     Moreover, upon information and belief, the assertion that it was necessary to
promise retention compensation to P&E employees to prevent them from leaving before the
merger was completed is false. Eight out of the ten employees remain employed by P&E today.
Many or all are longtime business associates of Richard Bernstein who would, in the ordinary
course, have been expected to remain at P&E, and maintain their ties with Bernstein, even absent

a promise of retention compensation.

92.     Even if it had been necessary for P&E to promise these employees retention compensation in order to retain them – and even if P&E had obtained advance approval from Millbrook to pay this extraordinary expense – the cost could not appropriately have been passed through to Millbrook in its entirety because the employees performed services for entities other than Millbrook during the period for which they were allegedly promised retention compensation.  As a result, the cost of any retention compensation should have been equitably allocated between Millbrook and these other entities under the express terms of the Services Agreement.  (*See* Services Agreement § 3(d)).  P&E breached its obligation to allocate costs by billing Millbrook for the entirety of the purported retention compensation expense.

93.     Moreover, if and to the extent that P&E was required to incur extraordinary expenses in order to retain the employees necessary to perform the Services, it breached its representation and warranty in the agreement that it "has the personnel, facilities and resources required to discharge and will discharge the Services contemplated by this Agreement in a timely and efficient manner."  (Services Agreement § 5(i)).  Plainly, the purpose of this representation and warranty (the "Personnel Representation") was to guarantee to Millbrook that P&E had and would continue to have the personnel necessary to perform all Services required under the contract.  This guarantee would be rendered meaningless if P&E could turn around and bill Millbrook nearly $1 million to retain the very personnel P&E represented it possessed.

94.     P&E also breached the Personnel Representation – and a separate representation that it has the "administrative, business and technical experience and expertise required to perform and will perform the Services" (Services Agreement § 5(ii)) – by failing ever to employ

-18-

the personnel necessary to provide certain contractually required services. For example, P&E at no time possessed the personnel necessary to "provid[e] assistance with respect to the Company's information systems including periodic reviews and coordination of the implementation of upgrades and new systems." (*Id.* § 1(b)).

95.     The Services Agreement provides that it may be terminated by either party "without judicial action or arbitration" in the event of "the breach of any material provision set forth in this Agreement by the other party hereto or the failure by such other party to observe or perform any material agreement to be observed or performed by such other party hereto, which breach or failure is not remedied within thirty (30) days after written notice thereof is given by the non-breaching party." (Services Agreement § 7(a)(i)).

96.     By letter dated March 21, 2008, Millbrook served notice of numerous material breaches of contract by P&E, including certain of the breaches described above.

97.     Because P&E cannot cure all of the material breaches of which it has been given notice within the requisite thirty days, Millbrook is entitled to terminate the agreement and be relieved of any further obligations to P&E under the agreement.

### First Counterclaim
### (Breach of Contract; Damages)

98.     Defendants repeat and reallege the allegations of paragraphs 55 through 97 as if fully set forth herein.

99.     As set forth above, P&E and Millbrook were parties to the Services Agreement.

100.     Millbrook fully performed all of its material obligations under the Services Agreement, except to the extent performance is excused.

101.    As set forth in detail above, P&E:

    a.  failed to perform the Services in "good faith" and to the "best of [its] capabilities," in violation of Sections 1(b), 1(d), and 5 of the contract by, among other acts, obtaining checks from Millbrook under false pretenses and causing such checks to be issued to P&E employees without authorization;

    b.  improperly calculated reimbursable costs, in violation of Section 3(b) of the contract;

    c.  failed to allocate costs equitably between Millbrook and other entities for whom it performed Services, in violation of Section 3(d) of the contract;

    d.  failed to make requests or demands in writing to Millbrook's President for the costs detailed above, in violation of Section 12 of the contract;

    e.  failed to obtain the advance approval of Millbrook for extraordinary out-of-pocket expenses including the purported retention compensation payments, in violation of Sections 3(c) and 12 of the contract;

    f.  failed to provide Millbrook with a "true up" within thirty days after the end of the annual period, in violation of Section 3(a) of the contract;

    g.  breached its representation and warranty that it has "the personnel, facilities and resources required to discharge and will discharge the Services contemplated by this Agreement in a timely and efficient manner" as set forth, *inter alia*, in paragraphs 93 and 94 above; and

    h.  breached its representation and warranty that it has the "administrative, business and technical experience and expertise required to perform and will perform the Services in a competent and professional manner" as set forth, *inter alia*, in paragraphs 81 and 94 above.

102.    By reason of the foregoing, Millbrook has been damaged in an amount to be determined at trial.

### Second Counterclaim
### (Breach of Contract; Declaratory Judgment)

103.    Defendants repeat and reallege the allegations of paragraphs 55 through 97 as if fully set forth herein.

104.    An actual controversy exists as to the rights and obligations of the parties under

the Services Agreement. Notwithstanding the many material breaches of contract by P&E set forth in detail above, P&E maintains that it has performed its obligations under the Services Agreement and that Millbrook is obligated to continue making payments to P&E under the agreement. P&E further contends that Millbrook has breached obligations under the Services Agreement by failing to pay the purported retention compensation, even though Millbrook has no contractual obligation to make payment for the reasons described above.

105.    By reason of the foregoing, Millbrook is entitled pursuant to 28 U.S.C. § 2201(a) to a declaratory judgment that: (i) Millbrook has performed all of its obligations under the Services Agreement except to the extent performance is excused, (ii) P&E has materially breached its obligations under the Services Agreement, and (iii) Millbrook may terminate the Services Agreement and be relieved of any further obligations to P&E under the Services Agreement.

### Third Counterclaim
### (Contractual Indemnification)

106.    Defendants repeat and reallege the allegations of paragraphs 55 through 97 as if fully set forth herein.

107.    As set forth above, P&E and Millbrook were parties to the Services Agreement.

108.    Millbrook has fully performed all material obligations under the terms of the Services Agreement, except to the extent performance is excused.

109.    As described in detail above, P&E has breached its contractual duties under the Services Agreement.

110.    Pursuant to the terms of the Services Agreement, P&E is obligated to indemnify Millbrook for its costs and expenses and/or any other losses (including, without limitation,

attorneys' fees and expenses and court costs) that Millbrook has incurred and shall incur as a result of P&E's breach of the Services Agreement.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Millbrook and UNFI hereby demand that all issues in this case be tried to a jury.

## RELIEF REQUESTED

WHEREFORE, Millbrook and UNFI respectfully request that this Court enter judgment in their favor, and against Plaintiff P&E, on all causes of action and further request:

A. that Plaintiff's Complaint be dismissed;

B. that Plaintiff's request for relief be denied;

C. that the Court award damages to Millbrook on its Counterclaims in an amount to be determined at trial;

D. that the Court issue a declaratory judgment that the Services Agreement has been validly terminated and that Millbrook is relieved of any further obligations to P&E under the Services Agreement;

E. that Plaintiff be ordered to pay the costs, charges and disbursements, including attorneys' fees, incurred by Millbrook and UNFI in this action; and

F. that the Court direct such other and further relief as it may deem appropriate.

Dated: New York New York
        March 24, 2008

COVINGTON & BURLING LLP

By: _____
        C. William Phillips
        Mark P. Gimbel
        Daniel L. Cendan

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000 (phone)
(212) 841.1010 (fax)
www.cov.com

*Attorneys for Defendants United Natural Foods,
Inc. and Millbrook Distribution Services Inc.*