UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
P & E PROPERTIES, INC.,

                Plaintiff,        OPINION

       -against-           08 Civ. 00553 (MGC)


UNITED NATURAL FOODS, INC., and MILLBROOK
DISTRIBUTION SERVICES, INC.,

                Defendants.

--------------------------------X

APPEARANCES:

        OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP
        Attorneys for Plaintiff
        Park Avenue Tower
        65 East 55th Street
        New York, New York 10022

        By:  Robert W. Sadowski, Esq.
             Peter M. Sartorius, Esq.

        COVINGTON & BURLING LLP
        Attorneys for Defendants
        620 Eighth Avenue
        New York, New York 10018

        By:  Mark P. Gimbel, Esq.
             Mari K. Bonthuis, Esq.

**Cedarbaum, J.**

P & E Properties, Inc. ("P&E") sues Millbrook Distribution Services, Inc. ("Millbrook") for breach of contract, and sues United Natural Foods, Inc. ("UNFI") for tortious interference with contract.  The complaint alleges that Millbrook failed to pay management fees to P&E and also failed to reimburse P&E for extraordinary expenses.

P&E moves for summary judgment on its claims of breach of contract, and Millbrook moves for summary judgment dismissing P&E's contract claim for extraordinary expenses.  For the reasons that follow, P&E's motion is denied, and Millbrook's motion is granted only to the extent that P&E's claim of breach of contract by failure to reimburse extraordinary expenses is dismissed.

## BACKGROUND

The following facts are undisputed, except where specifically noted.

P&E is a provider of administrative and executive services. Millbrook is a distributor of specialty foods.  On or about February 15, 2007, P&E and Millbrook entered into a General Administrative Services Agreement (the "Contract") expressly governed by New York law.

UNFI is also a distributor of specialty foods.  On or about October 5, 2007, Millbrook's parent company, DHI, entered into a merger agreement with UNFI under which a UNFI subsidiary merged

with DHI.  The merger transaction closed on November 2, 2007, and Millbrook became an indirect wholly-owned subsidiary of UNFI.

Richard Bernstein is the sole shareholder of P&E, and has served as its Chairman, President, and Chief Executive Officer at all relevant times.  Mr. Bernstein also served as the Chairman of the Board of Millbrook and was its controlling shareholder prior to the merger.[1]

Mr. Bernstein testified at his deposition that in about October of 2007, in his capacity as Chairman of the Board of Millbrook, he approved a "salary continuation plan" under which Millbrook would make "retention compensation payments" to ten P&E employees to ensure their cooperation and productivity through the merger.  It is undisputed that there was never a written "salary continuation plan."  It is also undisputed that there was never a writing approving payments by Millbrook to P&E employees.

On the day before the merger took effect, an employee of P&E, who also served as an officer of Millbrook, issued checks drawn on Millbrook's bank account to nine P&E employees in amounts totaling $855,023.  Although four recipients were also officers of Millbrook, none of the individuals who received checks had ever before been directly compensated by Millbrook or

---

[1] Mr. Bernstein was additionally the Chairman of the Board, President, and Chief Executive Officer of DHI prior to the UNFI merger.

had an employment agreement with Millbrook requiring severance payments in the event of a merger.

On about November 5, 2007, Millbrook stopped payment on these checks before they cleared.

On November 6, 2007, P&E submitted a memorandum to Millbrook with attachments including copies of the checks and check request forms.  The check request forms listed the purpose of each check as "[s]everance."

On November 14, 2007, P&E sent an invoice to Millbrook for payments to ten P&E employees pursuant to the "salary continuation plan."  The sum requested totaled $967,747.[2] Millbrook has refused to pay P&E's invoice.

All but two of the employees identified for payments pursuant to the "salary continuation plan" were retained by P&E following the merger, and it is undisputed that P&E has never made "retention compensation payments" to these employees.

Millbrook has not made monthly management fee payments to P&E for any month after December of 2007.

Millbrook and P&E exchanged four letters between March 21, 2008 and May 6, 2008.  The parties dispute the legal significance of the letters, but in them, Millbrook purports to give notice of

---

[2] This value exceeds the sum of the nine checks previously issued.  The November 14 invoice also requests payments related to "health insurance" and payment to an additional P&E employee.

breach and termination of the Contract, and P&E denies the
alleged breaches and the propriety of the attempted termination.

### DISCUSSION

Summary judgment should be granted if "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c)(2).  A genuine issue of material fact
exists when the evidence is such that a reasonable finder of fact
could return a verdict for the non-moving party.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510
(1986).  In deciding whether a genuine issue exists, a court must
"construe the facts in the light most favorable to the non-moving
party and must resolve all ambiguities and draw all reasonable
inferences against the movant."  Dallas Aero., Inc. v. CIS Air
Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Where, as here, the parties disagree about the proper
construction of a contract, summary judgment may be granted if
the relevant contractual language is unambiguous and conveys a
definite meaning.  Seiden Assocs., Inc. v. ANC Holdings, Inc.,
959 F.2d 425, 428 (2d Cir. 1992).  If the language of a contract
is unambiguous, its proper construction is a question of law.
See id. at 429.  In determining whether a contract is unambiguous
and should be construed as a matter of law, "the entire contract

must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency." Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000).

## I.   Reimbursement of "Retention Compensation Payments"

Each side moves for summary judgment on P&E's claim for reimbursement of retention compensation payments, and urges the adoption of its preferred interpretation of the Contract as a matter of law.  Although the parties agree that Section 3(c) of the Contract governs the question of whether these expenses are subject to reimbursement, they disagree about whether Section 12 requires that all communications pursuant to Section 3(c) be in writing.  Because "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations," I turn to the contractual language to determine whether it conveys a definite meaning. Seiden, 959 F.2d at 428.

Section 3(c) of the Contract is located within a section entitled "Compensation," and provides:

> The Company [Millbrook] shall also reimburse the
> Servicer [P&E] for any extraordinary documented out-of-
> pocket expenses incurred in providing the Services, the
> incurrence of which has been approved in advance by the
> Company.  As a condition to the reimbursement of any
> such extraordinary expenses, the Servicer shall provide
> the Company which [sic] such documentation as the
> Company may reasonably request with respect to the
> incurrence of any such expenses.

(Contract § 3(c).)

Section 12 is entitled "Notices" and provides in relevant part that:

> All notices, demands, consents, requests, instructions and other communications to be given or delivered or permitted under or by reason of the provisions of this Agreement or in connection with the transactions contemplated hereby shall be in writing . . . .

(Contract § 12.)

P&E argues that Section 3(c) simply requires that extraordinary expenses be approved in advance by Millbrook, and that Section 12 does not mandate that such approval be in writing. P&E supports its interpretation by observing that Section 3(c) does not use the word "consent" or specifically require written approval, while other provisions of the Contract do use the words "notice" and "consent" and explicitly refer to written communications.

The plain language of the Contract is inconsistent with this interpretation. Section 3(c) obligates Millbrook to reimburse P&E for extraordinary expenses that have been "approved in advance." Section 12 requires that "[a]ll notices, demands, consents, requests, instructions and other communications" given pursuant to the Contract be in writing. The relationship between these provisions is clear: Because Section 12 covers "all" communications, approval of extraordinary expenses under Section 3(c) must be in writing.

The remaining provisions of the Contract, including those highlighted by P&E--Sections 7, 9, 10, and 14--create no ambiguity as to this requirement.  While P&E is correct that Sections 7 and 14 employ the words "notice" and "consent," this language does not limit Section 12, which applies broadly to "all" communications "given or delivered or permitted" pursuant to the Contract.  Similarly, although certain provisions explicitly mention written exchanges while others do not, Section 12 clearly declares that "all" communications pursuant to the Contract must be in writing.

P&E argues that even if Section 12 controls communications pursuant to Section 3(c), written approval should not be treated as a condition precedent to the obligation to reimburse because it would increase P&E's risk of forfeiture.  But, express conditions must be performed as written.  See Oppenheimer & Co. v. Oppenheim, 86 N.Y.2d 685, 690 (1995).  Moreover, there is no risk of forfeiture where the occurrence of a condition is known in advance of reliance.  See Restatement (Second) of Contracts § 227 cmt. b (1981).

The language of the Contract expressly limits Millbrook's obligation to reimburse P&E to extraordinary expenses which have been "approved in advance" by Millbrook in writing.  The Contract therefore unambiguously makes advance written approval a condition of reimbursement.  Furthermore, there is no risk of

8

forfeiture by P&E because any uncertainty regarding the occurrence of the condition--that is, written approval--will necessarily be resolved for P&E in advance of its reliance.

I have examined the language of the Contract as a whole and find that it unambiguously makes advance written approval of extraordinary expenses a condition of Millbrook's obligation to reimburse extraordinary expenses.  It is undisputed that P&E did not obtain advance written approval from Millbrook of the so-called "retention compensation payments."[3]  Accordingly, the Contract does not obligate Millbrook to pay for these expenses.  Millbrook is therefore entitled to summary judgment dismissing P&E's claim for extraordinary expenses.

## II.  Management Fees

P&E seeks summary judgment on its claim of breach of contract with respect to Millbrook's refusal to pay monthly management fees to P&E.  Under New York law, a plaintiff's performance under the contract is an element of a breach of contract claim.  See JP Morgan Chase v. J.H. Elec. of N.Y., 69 A.D.3d 802, 803 (2d Dep't 2010) (stating that elements of cause of action for breach of contract are "the existence of a

---

[3] For this reason, it is not necessary to reach the question of whether the "retention compensation payments" are even "out-of-pocket expenses" pursuant to Section 3(c). Moreover, it is undisputed that P&E never made payments to its employees for retention compensation in connection with the merger of Millbrook.

contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages"). Here, P&E's performance under the Contract is hotly disputed by the parties, and Millbrook has produced evidence suggesting that P&E was not performing its services in good faith.  Because disputed issues of material fact remain with respect to P&E's claim for management fees, P&E's motion for summary judgment on this issue is denied.

## III.  Indemnification

P&E's right to indemnification under the Contract for expenses and attorneys' fees is contingent upon showing a breach of the Contract.  See Contract § 8(b); Griswold Special Care of N.Y., Inc. v. Executive Nurses Home Care, Inc., 66 A.D.3d 962, 963 (2d Dep't 2009) (finding award of attorneys' fees under indemnification provision of contract improper absent finding of breach of contract).  Because genuine issues of material fact remain regarding P&E's claim of breach of contract, the question of indemnification is premature.

### CONCLUSION

For the foregoing reasons, P&E's motion for summary judgment is denied, and Millbrook's motion for summary judgment is granted dismissing P&E's claim of breach of contract by failure to reimburse extraordinary expenses.

If UNFI wishes to pursue summary judgment on P&E's claim of tortious interference with contract, that motion should be presented in a separate notice of motion with a supporting brief.

SO ORDERED.

Dated:    New York, New York
          May 12, 2010

                                  S/_____
                                       MIRIAM GOLDMAN CEDARBAUM
                                       United States District Judge